**BRICKLEY, Plaintiff-Appellee, v. GENERAL ELECTRIC COMPANY, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3860. Decided October 11, 1956.

Paul R. Van Such, Youngstown, for plaintiff-appellee.
Steven E. Chuey, Youngstown, for defendant-appellant.

**OPINION**

Per CURIAM.

Defendant, a self insurer under the Workmen's Compensation Act

of Ohio, appealed to this court on questions of law from a judgment of the court of common pleas entered upon a jury verdict for plaintiff in plaintiff's appeal to that court from the disallowance, upon rehearing, by the Industrial Commission of Ohio of her claim for benefits because of the death of her husband as the result of an injury received allegedly in the course of and arising out of his employment with defendant.

By assignments of error defendant contends:—

"1. The common pleas court erred in failing to grant defendant's motion for a directed verdict at the close of all the evidence.

"2. The common pleas court erred in failing to grant defendant's motion for a new trial."

On February 26, 1952, Grant Brickley, aged 57 years, called decedent, was regularly employed by defendant as a laborer in charge of loading and unloading boxes of bulbs weighing fifty to fifty-five pounds, from a truck onto a scooter and then unloading the scooter and piling the boxes five high on the storeroom floor placing the highest box on the scooter pile on the storeroom floor, and taking each box in order until the bottom box on the scooter was the fifth in the stack of five on the storeroom floor.

About 10:30 o'clock on the morning of February 26, 1952, plaintiff's decedent picked up one of such boxes from the bottom of a scooter, held it above his head with both hands, lost his balance, and leaned backwards, and placed the box as the fifth box on a pile on the storeroom floor.

An eye witness testified:—

"Q. What if anything unusual did you see happen to Mr. Brickley?

"A. When he throwed that one box up, throwed it up there five high, he kind of over balanced and went back or something, and gave it a pitch like he must have over balanced himself or something, and the box got away from him and he came back with it and he gave it a pitch and when he got done with that and he looked around at me and he was panting.

"* * *

"Q. Now, you have testified, Mr. Gillespie, that he raised the box over his head?

"A. Yes.

"Q. I will ask you, was the box in back of his head or in front or on top of his head?

"A. Well, it kind of went back at first.

"Q. Back of his head?

"A. Instead of leaving it drop or anything, he gave it a throw to get it up there, because everybody picks them boxes up a different way. There ain't one man that would pick them up the same way and put them up.

"Q. Did you notice at the time that he had it over and above his hands and over his head in back of his head, whether or not he was upright or waivering or losing his balance or what?

"A. He was kind of upright and then kind of lost his balance with the box, kind of throwed him back, which is easily done.

"Q. Then you say he was in that position and he threw it?

"A. Yes.

"Q. How did he throw it?

"A. Just went like this (indicating).

"Q. Forced it out?

"A. Kind of forced it and pitched it."

After completing such work decedent was breathing with difficulty and held his right hand in the region of his left shoulder, shook his head, rested several minutes, and then continued doing the same kind of work for forty-five minutes to an hour. Later in the day after being assigned to other duties decedent was pale.

Still later that day defendant's physician, who examined decedent at defendant's dispensary, diagnosed his condition as angina pectoris.

Upon his arrival at his home plaintiff noted his paleness and shortness of breath.

Later on the same day decedent's physician who had been his physician for ten years but had not treated him for two years prior thereto, found that he was suffering from a condition which he had diagnosed previously as bronchial asthma, pulmonary emphysema, generalized arteriosclerosis, and arteriosclerotic heart disease, and presumptively diagnosed his present condition as coronary sclerosis and angina pectoris.

Plaintiff's physician witness testified:—

"Q. Now, Doctor, what is your opinion?

"A. That there is an aggravation of his previous condition by this sudden exertion."

Dr. Maher testifying for plaintiff stated:—

"Q. Now, I'll ask you whether he will—I don't know whether you completed the answer to what causal relationship between the events that transpired and the death?

"A. I do feel there is a direct causal relationship between the events that transpired and his subsequent death.

"Q. What are the reasons for your opinion, Doctor?

"A. The reasons for my opinion are as follows: here is an individual who had arteriosclerotic heart disease. He was known to have had bronchial asthma over a long period of time which had eventuated in pulmonary emphysema. He had generalized arteriosclerosis and, also, coronary-sclerosis. He was able to carry on his job in a satisfactory manner, as given me in the record, and, on this day, there was a strain or an exertion due to his losing his balance and having to pitch this bulky carton upon to the pile. He was noticed to have stopped his regular work. It was said that he panted; that he felt of his precardial area; that he looked pale and, that he was sent to the dispensary later that day where he was adjudged to have had an attack of angina. He was sent on to see Doctor Wagner who felt that he had had an angina attack and he was sent on home and he died the next day in a space of fifteen minutes. My opinion on the matter is; that at the time of this episode of losing his balance, when he had to put forth this extra effort at that time, he probably initiated the thrombus which, subsequently, let go occluding the vessel and causing the infarction on his death."

Doctor Mahar in answer to a hypothetical question stated there was a direct causal relationship between the injury sustained by the decedent on February 26, 1952, the events that transpired and his subsequent demise. Dr. Wagner in support of his answer to the hypothetical question stated that there is an aggravation of his previous heart disease by overexertion which increased the symptoms of the disease; and Dr. Mahar in support of his answer to the hypothetical question stated that when decedent lost his balance and put extra effort of pitching this bulky carton to the pile, he probably initiated this thrombis which let go, occluding the vessel and causing his death.

About 9:00 P. M. on February 27, 1952, decedent suffered shock and went into a coma and died enroute to a hospital.

His physician certified his death was due to "coronary occlusion, fifteen minutes," with antecedent cause due to "coronary sclerosis and generalized arteriosclerosis" of approximately one year's duration.

The evidence shows the happening of an unusual event which aggravated a previous condition of disability. Therefore the trial judge was not in error in overruling defendant's motion for judgment in its favor nor in submitting this case to the jury.

The judgment of the court of common pleas is affirmed.

PHILLIPS, PJ, NICHOLS and GRIFFITH, JJ, concur.